IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION


|                          |   |                              |
|--------------------------|---|------------------------------|
| RUSSEL LEE SINGLETARY    | ) |                              |
|                          | ) |                              |
| Movant,                  | ) | Case No. 12-0314-CV-W-NKL-P  |
|                          | ) | Crim. No. 09-00058-01-CR-W-NKL |
| v.                       | ) |                              |
|                          | ) |                              |
| UNITED STATES OF AMERICA | ) |                              |
|                          | ) |                              |
| Respondent.              | ) |                              |
|                          | ) |                              |
|                          | ) |                              |


## ORDER


Before the Court is Russel Lee Singletary's *pro se* Motion to Vacate, Set Aside, or

Correct his sentence pursuant to 28 U.S.C. § 2255 [Doc. # 1].  For the reasons set forth

below, the Court DENIES the motion.

## I.    Background and Procedural History

On February 24, 2009, a federal grand jury indicted Singletary on four counts, two for

armed robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (Counts One and Three), and two

for brandishing a firearm during and in relation to a crime of violence in violation of §

924(c) (Counts Two and Four).  Counts One and Two were based on Singletary's alleged

robbery of a U.S. Bank on December 1, 2008.  Counts Three and Four were based on

Singletary's alleged robbery of a U.S. Bank on February 9, 2009.

On December 29, 2009, the Court accepted Singletary's pleas of guilty to Counts Three and Four. As part of a plea agreement, the government agreed to dismiss Counts One and Two of the indictment.

On May 6, 2010, the Court adopted the presentence investigation report ("PSR"), which recommended a guidelines sentencing range of 130-141 months' imprisonment. The PSR noted that Singletary's guideline sentence would have been 441-455 months had he been convicted on all four counts. It also contained a summary of the December 1, 2008 robbery under the heading, "Offense Behavior Not Part of Relevant Conduct."

On May 25, 2010, the Court sentenced Singletary to imprisonment for a term of 120 months on Count Three and 84 months on Count Four, to be served consecutively for a total term of 204 months. The Court also imposed a supervised release term of five years on each count, to run concurrently. The Court varied upward from the guidelines because it found that the PSR's Criminal History Category did not adequately reflect Singletary's criminal background.

Singletary has now filed a timely *pro se* motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 based on defense counsel's erroneous prediction that Singletary would be sentenced as a career offender. Grounds One and Two of the motion allege that defense counsel's assistance was constitutionally ineffective because of this mistake.[1] Ground Three claims that Singletary's plea was neither knowing nor voluntary

---

[1] Ground One alleges broadly that defense counsel's performance was deficient and that Singletary was prejudiced, but presents no factual allegations. This ground contains only Singletary's description of the case law on ineffective assistance of counsel claims. Ground Two

because of counsel's error.  In Ground Four, Singletary claims to be actually innocent of the December 1, 2008 robbery and that his defense counsel was ineffective for failing to investigate his alibi defense.

## II.     Discussion

### A.     Standard for an Evidentiary Hearing

An evidentiary hearing on a motion filed under 18 U.S.C. § 2255 is necessary unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief.  *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008).  Thus, a claim under § 2255 may be summarily dismissed without an evidentiary hearing if it is insufficient on its face or the record affirmatively refutes the factual allegations contained in the motion.  *Id.*  Accordingly, an evidentiary hearing is not required if the allegations in the motion "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995).  Upon review of the motion, files, and records, the Court finds that all of Singletary's claims can be fully and fairly evaluated on the existing record and no evidentiary hearing is required.

### B.     Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the movant must prove both: 1) that defense counsel's representation was deficient; and 2) that the deficient

---

presents the alleged factual basis for Singletary's ineffective assistance claim. Consequently, the Court will consider Grounds One and Two as one claim.

performance prejudiced the movant's case.  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  Failure to prove "either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Strickland v. Washington*, 466 U.S. 668, 700 (1984).  To show prejudice, a claimant who alleges that counsel's deficiency caused him to plead guilty must show that "there is a reasonable probability that, but for counsel's errors, [the claimant] would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *see also Missouri v. Frye*, 132 S. Ct. 1399, 1419 (2012).  "In many guilty plea cases," this determination will depend on the likelihood that defense counsel would have made a different recommendation about the plea if not for the alleged deficiency.  *See Hill*, 474 U.S. at 59.  This showing may, in turn, depend on whether the claimant can prove that she was objectively likely to succeed at trial.  *See id.*

Singletary argues that defense counsel was ineffective because counsel erroneously predicted that Singletary would be treated as a career offender under the Federal Sentencing Guidelines and thus induced him to plead guilty.  It is true that defense counsel advised Singletary that he was a career offender and presented the possible penalties Singletary would face if sentenced as a career offender.  It is also true that the PSR did not classify Singletary as a career offender.  Singletary claims that this error prejudiced him because his decision to plead guilty turned entirely on defense counsel's advice about his career offender status.

### 1.    Prejudice

The prejudice issue is dispositive in this case because Singletary's allegation that he would have insisted on going to trial if not for counsel's belief that he was a career offender is contradicted by the record. Singletary claims that he decided to plead based on counsel's advice that a guilty plea was necessary "to avoid a prison sentence tantamount to Life imprisonment." [Doc. # 1 at 26]. But it is clear from the record that counsel's advice in this respect did not depend singularly, or even materially, on the career offender determination.

Even if Singletary was not designated a career offender, he still risked a potential life sentence if he went to trial and was convicted on all four counts. If Singletary had been convicted on both counts of violating § 924(c), he would have faced a statutory minimum sentence of 32 years and a statutory maximum of life in prison, consecutive to any sentence imposed for the robberies. Counsel avers in her affidavit, "My advice to Mr. Singletary was for him to plead guilty in order to avoid a mandatory 32 year sentence on the two [§ 924(c)] counts." [Doc. # 5-1 at 2]. In addition, the PSR noted that if Singletary had gone to trial and been convicted on all counts, his guideline sentence would have been 441-455 months. [Crim. Doc. # 45 at 24]. During sentencing, defense counsel described Singletary as "a 66-year-old man in poor health." [Crim. Doc. # 51 at 9]. Thus, even if Singletary received the minimum guideline sentence, it would still have been tantamount to life in prison. *See* [Crim. Doc. # 42 at 18] (His defense counsel said: "Significantly at his age, 25 years is basically a life sentence."). Moreover, after a trial, the sentencing court could have chosen to depart upward from the guidelines. This

possibility seems particularly likely considering that the Court did in fact depart upward during sentencing after Singletary pleaded guilty.

Consequently, counsel's admonishment to Singletary that "if we go to trial and lose, you are going to die in prison," [Doc. # 9-1 at 4], was accurate regardless of counsel's opinion on Singletary's career offender status. There is no reason to believe that counsel's advice would have been different if not for her mistaken prediction that Singletary would be sentenced as a career offender.

Furthermore, defense counsel's recommendation that Singletary negotiate a plea was based largely on Singletary's bleak prospects for success at trial. In a letter to Singletary dated May 20, 2009, counsel wrote:

> I don't feel like we have a lot of good things to say at a trial. . . . Things are bleak, especially on the second robbery. You are arrested in a car that matches the description of the car, with clothes matching the description of the robber, wearing glasses that match the glasses the robber was wearing, and there's a bunch of money in the glove box. The pictures from the first robbery look every bit as much like you as from the second robbery. The teller will say it was the same person.

[Doc. # 9-1 at 4]. Likewise, in a letter to Singletary dated July 21, 2009, defense counsel wrote, "I don't think we have a strong suppression issue or, ultimately, a strong defense. I think you should seriously consider allowing me to offer a plea . . . ." [Doc. # 9-1 at 6].

Singletary has not made any allegations that contradict this dour picture of his chances of success at trial. Singletary suggests that he had an alibi defense to the December 1, 2008 robbery that counsel did not properly investigate, but this claim is contradicted by the record. In the May 20, 2009 letter quoted above, defense counsel

wrote, "The hospital didn't give us a lot of help with an alibi, and they said that you would have been able to (and presumably did) drive yourself home after the procedure on December 1." [Doc. # 9-1 at 4]. Similarly, defense counsel avers in her affidavit, "[M]y investigation had failed to corroborate [Singletary's] alibi for the December 1, 2008 bank robbery." [Doc. # 5-1 at 2]. Singletary points to no evidence to contradict this.

The record also conflicts with Singletary's claim that he pleaded guilty based on counsel's advice that the December 1, 2008 robbery would not affect his sentence due to his career offender status. Singletary claims that counsel "specifically represented to movant that his [pleas] would not be impacted by any relevant conduct from the December 1, 2008 robbery." [Doc. # 9 at 11]. But in a letter to Singletary dated November 10, 2009, counsel wrote, "You stated . . . that you want the relevant conduct dropped. That's not likely to happen, . . . . There is virtually no way that I am going to be able to keep from the judge the fact that you are suspected in another robbery." [Doc. # 9-1 at 12]. The plea agreement also included a provision acknowledging that "the conduct charged in any dismissed counts of the indictment . . . may be considered as 'relevant conduct' . . . ." [Crim. Doc. # 40 at 2]. During the plea colloquy, Singletary affirmed that he had read and understood the plea agreement. [Crim. Doc. # 42 at 11-12].

Counsel did advise Singletary that the December 1, 2008 robbery would not affect his guideline sentencing calculations. [Doc. # 5-1 at 2]. But Singletary's belief that his sentence was increased based on this conduct is mistaken. The PSR only mentioned the December 1, 2008 robbery once, under the heading "Offense Behavior Not Part of

Relevant Conduct." [Crim. Doc. # 45 at 10]. The PSR did not propose any sentence enhancements based on this robbery, *see* [Crim. Doc. # 45 at 9-10], and the Court did not mention this robbery when explaining the upward departure in Singletary's sentence, *see* [Crim. Doc. # 51 at 15].

Finally, Singletary was also informed repeatedly that his counsel's predictions about sentencing were not certain or authoritative. While defense counsel told Singletary that she believed he would be sentenced as a career offender, she also presented potential outcomes if he was not so designated. *See* [Doc. # 9-1 at 12]. Likewise, the plea agreement contained different guideline applications depending on whether or not Singletary was determined to be a career offender. [Crim. Doc. # 40 at 6].

In addition, the plea agreement contained provisions acknowledging that the guidelines are only advisory and that the Court is not bound by the guidelines or any estimation of the guideline range offered by the parties. [Crim. Doc. # 40 at 3-4, 6-7]. When Singletary entered his guilty pleas, he acknowledged that he had read and understood the plea agreement. [Crim. Doc. # 42 at 11-12]. During that same exchange, Judge Maughmer repeated the advisements about sentencing contained in the plea agreement. [Crim. Doc. # 42 at 13-14]. Judge Maughmer also expressly disclaimed any opinion about sentencing offered by defense counsel:

> Q.  If [defense counsel] or someone else has offered their opinion as to what sentence you may receive, that's fine, so long as you understand that that is simply their opinion and that it is solely up to Judge Laughrey and no one else to decide what sentence you will receive. Do you understand that?

A.     Yes, sir.

[Crim. Doc. # 42 at 15].  Thus, Singletary knew at the time he entered his pleas that the

sentence estimates provided by defense counsel were not necessarily correct and the

sentencing judge would make the final decision.

In conclusion, Singletary has not shown a reasonable probability that the outcome

of the proceedings would have been different but for counsel's mistaken opinion as to

Singletary's status as a career offender.  Thus, the Court finds that Singletary has not

shown prejudice.  Because this is dispositive as to Singletary's ineffective assistance of

counsel claim, the Court need not address whether defense counsel's performance was

deficient.

### C.     Knowing and Voluntary Plea

Singletary's claim that his guilty plea was neither knowing nor voluntary because

of defense counsel's advice on the career offender issue is inadequate on its face.  It is

well established in the Eighth Circuit that a misunderstanding about how the sentencing

guidelines will apply in a particular case will not invalidate a plea.  *See United States v.*

*Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006).  "This is true even where the

misunderstanding is caused by defense counsel's erroneous estimation of what the

ultimate sentence will be."  *Id.* (citing *United States v. Burney*, 75 F.3d 442, 445 (8th Cir.

1996)); *see also United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999) ("[A]

defendant's reliance on an attorney's mistaken impression about the length of the

sentence is insufficient to render a plea involuntary so long as the court informed the defendant of his maximum possible sentence." (citation omitted)).

Thus, Singletary's claim fails to allege facts that would entitle him to relief. Singletary was informed about the maximum, statutory sentence he could receive, [Crim. Doc. # 42 at 5-6], and affirmed that he voluntarily agreed to plea, [Crim. Doc. # 42 at 12, 19]. He admitted to committing the acts underlying his pleas and convictions, and confirmed that he was guilty of the two offenses. [Crim. Doc. # 42 at 20-23]. Consequently, even if Singletary relied heavily on defense counsel's mistaken impression that he would be sentenced as a career offender, this would not provide cause to vacate the pleas. *See Granados*, 168 F.3d at 345.

Furthermore, the record contradicts Singletary's claim that the career offender determination singularly determined his decision to plead. When asked to summarize why a plea was in Singletary's best interest, defense counsel made no mention of the career offender designation. Rather, defense counsel stressed the desirability of avoiding the 25 year consecutive sentence that would have been imposed for a second conviction under § 924(c). [Crim. Doc. # 42 at 18]. Judge Maughmer then asked Singletary whether he understood and agreed with what defense counsel had said. Singletary answered that he did, without any mention of the career offender issue. [Crim. Doc. # 42 at 18-19]. The 25 year consecutive sentence for a second violation of § 924(c) in no way depended on whether or not Singletary was found to be a career offender. Consequently, this exchange directly contradicts Singletary's claim that he was induced to plead based

solely on defense counsel's mistaken prediction that he would be sentenced as a career offender.

In conclusion, it is apparent from the record that Singletary pleaded guilty to avoid the harsh sentence that would have resulted if he had gone to trial and been convicted on all four counts. Even if counsel erroneously predicted a somewhat harsher outcome, Singletary's plea was still knowing, intelligent, and voluntary.

###   D.     Actual Innocence

Singletary claims to be actually innocent of the December 1, 2008 robbery and that counsel was ineffective for failing to investigate his alibi defense. But Singletary was not convicted of this robbery. The charges related to this robbery were dismissed pursuant to the plea agreement. Insofar as this allegation relates to Singletary's ineffective assistance of counsel claim, it has already been addressed and rejected. In all other respects, this allegation is insufficient on its face because it fails to state a claim that would entitle Singletary to relief.

###   E.     Certificate of Appealability

The Court will issue a certificate of appealability only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, Singletary has not made a substantial showing of the denial of a constitutional right. Consequently, the Court does not issue a certificate of appealability here.

### III.     Conclusion

For the reasons set forth above, it is hereby ORDERED that Russel Lee

Singletary's pro se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §

2255 [Doc. # 1] is DENIED.


s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  August 29, 2012
Jefferson City, Missouri